Argued at Pendleton October 25, reversed November 23, 1926.

## T. J. CARICO v. CRYSTAL DISTRICT IMPROVEMENT CO. ET AL.

### (250 Pac. 745.)

Waters and Watercourses—Plaintiff, in Suit to Cancel Irrigation District Bonds, Held Entitled to Decree Against Defaulting Defendants, Though Suit was Dismissible as to Answering Defendants Showing No Interest (Laws of 1911, p. 256).

1. Where defendants, answering in suit to cancel bonds of irrigation improvement district, incorporated, under Laws of 1911, page .256, showed no ownership or interest in lands within district involved and raised only an academic question, *held* plaintiff was entitled to decree, as prayed for, as against defaulting defendants, though suit should be dismissed without prejudice to defendants answering.

Waters and Watercourses.

2. Irrigation district, in issuing its obligations, must proceed according to statute authorizing it.

---

2. See 15 R. C. L. 497.

Waters and Watercourses.

3. Stockholders' payment of assessments to irrigation district *held* no consideration for issuance to them of district bonds in amount equal to or greater than assessments.

Contracts, 13 **C. J.**, p. 351, n. 27.
Equity, 21 **C. J.**, p. 802, n. 23.
Quieting Title, 32 **Cyc.**, p. 1378, n. 73.
Waters, 40 **Cyc.**, p. 822, n. 31, 34 New.

From Malheur: DALTON BIGGS, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the names of *Mr. A. A. Smith, Messrs. Richards & Haga* and *Mr. Gustav Anderson,* with an oral argument by *Mr. A. S. Grant.*

For respondents there was a brief and oral argument by *Mr. Ed. R. Coulter.*

BURNETT, J.—The plaintiff is the admitted owner and in possession of a tract of land in Malheur County situated within the boundaries of the Crystal District Improvement Company. This concern is a corporation organized and existing under the act of February 23, 1911, entitled

"An act to enable land owners to incorporate themselves for the purpose of irrigation or drainage, defining their corporate powers, regulating the manner of issuing bonds, making the debts of said corporation a lien on the lands of said owners, and fixing the organization, and annual license fees of such corporations."

With unnecessary particularity, the complaint alleges the organization of the corporation, the election of directors, the taking in of additional lands, adop-

tion of plans and specifications for and an estimate of the cost of the proposed improvement, looking to the irrigation of lands in the district and the construction and installation of a pumping system for that purpose. The admitted cost of construction of the irrigation works was $23.30 per acre and the stockholders of the company, otherwise the land owners within its boundaries, were assessed for the expenses to that amount and they paid the assessment. On January 11, 1912, the district authorized the issuance and sale of its bonds in the sum of $55,000. The bonds were not sold but on completion of the works the company issued them in the sum of $41,625, or at the rate of $37.50 per acre and distributed them among its members in proportion as they had paid their assessments. In short, although the project costs but $23.30 per acre, they distributed the bonds among its stockholders who had paid their assessments at the rate of $37.50 per acre. The plaintiff purchased his tract January 15, 1920. His immediate grantor had acquired it from the grantee of those who were owners of the tract when the corporation was formed and the bonds distributed as stated. The original recipients of the bonds pertaining to this tract transferred them to their grantee with the title to the land but that grantee sold it to the plaintiff without also transferring the bonds. In other words, they divorced the bonds from the land and disposed of them to different parties, the land coming to the plaintiff but without any bonds.

The complaint, in substance, charges that those obligations were issued in the first place without any consideration therefor, and consequently were void. This suit is designed to quiet the title of the plaintiff to his land. He claims that the bonds in question

are apparently valid claims against his land but, in fact, are void for want of consideration. He makes parties defendant the Crystal District Improvement Company, the Weiser Land Company, a corporation, Detweede Northwestern and Pacific Hypotheek Bank, a corporation, and the following named individuals: R. U. Bradshaw, J. M. Lynch, Nathan Sommer, Ed. R. Coulter, Robert Coulter, F. B. Wilcox, William A. Wilcox, J. W. Ewing, J. W. Galloway, Wyman Ellis, Mrs. B. A. Humphrey, A. Grimes, A. H. Keller and H. B. Purl.

The prayer of the complaint is that:

" * * the defendants and each of them be required to surrender up the said bonds and each of them to the Crystal District Improvement Company in order that said bonds and each of them be cancelled.

"For a decree of the court cancelling, annulling, and setting aside said bonds and each of them.

"For a decree quieting title to plaintiff's lands, and to the effect that the plaintiff is the owner in fee thereof, free and clear of any claim of lien thereon by reason of said bonds or any of them."

and for further relief as may be meet and equitable in the premises, together with costs and disbursements.

All the defendants except Bradshaw, Lynch, Sommer and Ed. R. Coulter defaulted. These four individual defendants admitted a large part of the complaint and denied other parts and, without showing that they had any interest in the subject matter of the suit or owned any of the bonds, went on and set up in their answer a history of the organization of the corporation, Crystal District Improvement Company, stating the costs of the improvement at $23.30 per acre, and the issuance of bonds at the rate of $37.50 per acre, but said in effect that this was in

pursuance of an arrangement unanimously entered into by the then stockholders or land owners within the district that the assessments they had paid would be considered as loaned to the Improvement Company for which it became liable to them and that the bonds were issued in payment of that liability. It is also stated in the answer that one of the predecessors in interest of the plaintiff, about May 27, 1912, instituted an action in the Circuit Court for Malheur County against the Crystal District Improvement Company, in which it asked that said bonds and the district itself be adjudged to be invalid and void and that the district be enjoined and restrained from issuing said bonds; that a demurrer to the complaint was overruled and judgment of the court was entered, adjudging that the predecessor mentioned was then the owner of lands now owned by the present plaintiff and that the bonds were valid and legal and an existing lien against all the lands of the defendants, and it was said:

"That said judgment has never been vacated, annulled or set aside and is still in full force and effect; that same was appealed from, but the appeal was by the Supreme Court of the State of Oregon dismissed."

1. The whole answer was denied by the reply. The testimony shows that the answering defendants do not own any of the bonds in question. As stated, the answer itself does not show that they are interested in any of the subject matter of this suit. Their pleadings simply present what is to them an academic question, not calling for any affirmative relief. The best that can be said of the answer is that it amounts to a disclaimer. The Circuit Court, however, made a decree dismissing the complaint of the plaintiff from

which he appealed. He was at least entitled to a decree according to the prayer of his complaint against the defendants who did not answer. As to them the bill is to be taken as *pro confesso*.

The statute under which the corporation was organized is the act of February 23, 1911, already alluded to by title. After providing about the issuance of bonds, Section 10 of the act declares that:

" * * Said bonds shall not be sold for less than ninety per centum of their face value. If said bonds are received in payment of any obligation of the corporation they shall be received at face value plus accrued interest."

2, 3. It is hornbook law that a corporation such as is described in the pleadings must, in issuing its obligations, proceed according to the statute authorizing it. That is the measure and mode of their authority. The stockholders had paid their assessments in proportion to their holdings of land within the district. These they were bound to pay. Doing what they were obliged to do constituted no consideration for the issuance even of bonds equal in value to the amount of the assessment paid. Assuredly, there was no consideration for the extra amount of bonds reflected by the difference between $37.50 per acre, the amount of the bonds distributed, and the actual cost of the improvement, confessedly amounting only to $23.30 per acre. Whatever may be said of the stockholders as between themselves who actually participated in this gratuitous disposition of the *prima facie* obligations of the company, it cannot affect the plaintiff who never received any part of them.

The case alluded to, in which it was sought to declare the Crystal District Improvement Company to be a void concern and to enjoin the issuance of its

bonds, is *Tyree* v. *Crystal District Improvement Company*, 64 Or. 251 (126 Pac. 605). The matter directly decided on appeal and final decree was that the existence of a *de facto* corporation cannot be attacked collaterally by injunction. The court expressly declined to determine the legality of the proceedings described in the record there, but held only that the validity of the corporation and the validity of its bonds could not be indirectly assailed by injunction. The effect of that decision was to leave open the questions here involved. It is in no manner applicable here on the part of the defendants answering because they have not shown that they have any interest in the subject matter of the suit. They simply urged an academic question, not calling for decision, and are really not entitled to more than a dismissal of the suit without prejudice.

The decree, therefore, will be dismissing the suit against the answering defendants without prejudice and without costs or disbursements and against the defendants who are in default according to the prayer of the complaint.    REVERSED AND DECREE ENTERED.

RAND, J., absent.